### BORSETH *v.* CITY OF LANSING.

1. CONSTITUTIONAL LAW—SEPARATION OF POWERS—RE-EMPLOYMENT OF EX-SERVICEMEN.

Statute relative to re-employment of ex-servicemen, which requires determinations as to whether the employee was still qualified to perform the duties of his position and whether it is feasible to re-employ him to be made by employing administrative officials and imposes upon the court the judicial function and duty, upon petition, to require compliance with the act is not unconstitutional as an improper delegation of executive functions to the courts (Const 1908, art 4, §§ 1, 2; PA 1951, No 263, §§ 2, 5).

2. SAME — SEPARATION OF POWERS — COURTS — ADMINISTRATIVE AGENCIES.

The role of the judiciary in reviewing controversies as to whether an administrative agency has made determinations as required by law is not to substitute judicial judgment for administrative judgment but to inquire whether the administrative agency

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 11 Am Jur, Constitutional Law § 204; 14 Am Jur, Courts § 197.
[3, 4, 6–9, 11, 12] 12 Am Jur, Constitutional Law § 501; 56 Am Jur, Veterans and Veterans' Acts § 9 *et seq.*
[3, 4, 6–9, 11, 12] Re-employment of discharged servicemen. 167 ALR 124.
Constitutionality of State veterans' public employment preference laws. 161 ALR 494.
[5] 37 Am Jur, Municipal Corporations § 116.
[13] 14 Am Jur, Costs § 91.

has made the determination and, if so, to accept it if, and only if, it is supported by evidence and has a sufficient foundation (Const 1908, art 4, §§ 1, 2).

3. MUNICIPAL CORPORATIONS—PARTIES—RE-EMPLOYMENT OF VETERAN.
Defendant municipal board of police and fire commissioners was a necessary party to proceeding to compel it to re-employ plaintiff, an ex-serviceman, as a member of the police force, where the board was the employer, although not a separate legal entity under the act (CL 1948, § 613.35; PA 1951, No 263).

4. SAME—RIGHT OF EX-SERVICEMEN TO RE-EMPLOYMENT—WAIVER—CONDITIONS.
Ex-serviceman's right to re-employment as city policeman was not waived by virtue of fact that he had resigned rather than taken a leave of absence to perform military duty, where statute conferring right to re-employment did not make such right dependent upon manner of separation (PA 1951, No 263).

5. SAME—RESOLUTIONS—CHARTERS—STATUTES.
No municipal board resolution nor municipal charter provision may supersede a statutory provision conferring a right.

6. SAME—APPLICATION FOR RE-EMPLOYMENT.
Contention that plaintiff had not made a sufficient or proper application for re-employment as a city policeman *held*, without merit, where defendant board of police and fire commissioners did consider his informal application and determined not to reinstate him for an entirely different reason (PA 1951, No 263).

7. OFFICERS—RE-EMPLOYMENT OF EX-SERVICE PERSON AS PUBLIC EMPLOYEE.
A person who was holding a position as a public employee at time of entering into military service is presumed to have been qualified to hold such position, the lack of qualification to justify denial of statutory right to re-employment being confined to such as result from disability sustained during such service (PA 1951, No 263).

8. MUNICIPAL CORPORATIONS—RE-EMPLOYMENT OF EX-SERVICEMEN—QUALIFICATION—EVIDENCE.
Record in proceeding by ex-serviceman to compel municipal board of police and fire commissioners to re-employ him as a police officer *held*, to lack evidence that he was not still qualified and to establish that their refusal was for a different reason (PA 1951, No 263).

9. APPEAL AND ERROR—QUESTIONS REVIEWABLE—RE-EMPLOYMENT OF SERVICEMEN.

Defendant officers may not assert on appeal from order denying plaintiff a right to re-employment as a city policeman a reason not relied upon and administratively determined as a fact by defendant public employer previous to or at the time of its refusal to re-employ plaintiff (PA 1951, No 263).

10. SAME—QUESTIONS REVIEWABLE—STATEMENT OF REASONS AND GROUNDS FOR APPEAL—STATEMENT OF QUESTIONS INVOLVED.

A question not raised in appellants' statement of reasons and grounds for appeal nor in the statement of questions involved in their brief need not be determined by the Supreme Court.

11. MUNICIPAL CORPORATIONS—RE-EMPLOYMENT OF EX-SERVICEMEN.

Fact that plaintiff, an ex-serviceman, had resigned and withdrawn his contributions to pension fund before entering military service *held,* not to justify defendant municipal board of police and fire commissioners' refusal to re-employ him as a police officer, where it does not appear he was not still qualified or that it was not feasible for such defendant to do so and he offered reimbursement for contributions withdrawn (PA 1951, No 263).

12. SAME—RE-EMPLOYMENT OF EX-SERVICEMEN—CIRCUIT COURTS—JURISDICTION.

The circuit court had power to compel defendant board of police and fire commissioners to comply with statute requiring it to re-employ employees who had severed employment to perform military service if still qualified to serve in former capacity and if it were feasible to do so, where defendant board had not made such determinations nor determination that it had or had not other available employment for applicant no longer qualified to serve in former position (PA 1951, No 263).

13. COSTS—PUBLIC QUESTION—REINSTATEMENT OF EX-SERVICEMEN.

No costs are allowed in proceeding to compel reinstatement of former police officer to employment by defendant board of police and fire commissioners, a public question being involved (PA 1951, No 263).

Appeal from Ingham; Hayden (Charles H.), J. Submitted October 8, 1953. (Docket No. 32, Calendar No. 45,909.) Decided November 27, 1953.

Petition by James Borseth against City of Lansing, a municipal corporation, and its Board of Police and Fire Commissioners to compel reinstatement of plaintiff, now a military service veteran, as a member of the police force. From order requiring such reinstatement, defendants appeal. Affirmed.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Maurice M. Moule,* Assistant Attorney General, for plaintiff.

*Charles P. Van Note,* City Attorney, for defendant City of Lansing.

*Pierce, Planck & Ramsey,* for defendant Board of Police and Fire Commissioners.

DETHMERS, C. J. This is an appeal from a circuit court order requiring defendants to restore plaintiff to a position as policeman and to compensate him for loss of wages suffered by reason of their failure to do so immediately upon his application for reemployment. The order was entered under PA 1951, No 263 (CLS 1952, § 35.351 *et seq.;* Stat Ann 1952 Rev § 4.1486[1] *et seq.*), which provides for rights of public employees who enter the armed forces to reinstatement after relief from military duty.

Section 2 of the act provides, in part:

"(a) Any public employee who leaves a position * * * to perform military duty, * * * and who is relieved or discharged from such duty under honorable conditions, and makes application for reemployment within 90 days after he is relieved from military duty * * * shall— .

"(1) If still qualified to perform the duties of such position, be restored to such position; * * *

"(2) If not qualified to perform the duties of such position by reason of disability sustained during

such service, such public employee shall be placed in such other position, the duties of which he is qualified to perform, * * *

"(b) * * * if it is determined that * * *

"(2) For any reason it is not feasible for such person to be restored to such department or agency, it shall be determined whether or not there is a position in any other department or agency of the same public employer for which such person is qualified and which is either vacant or held by a person having a temporary appointment thereto or less seniority than the employee returning from military service. In any case in which it is determined that there is such a position, such person shall be restored in service and appointed to such position by the department or agency in which such position exists."

Section 5(b) provides, in part:

"In case any public employer fails or refuses to comply with the provisions of this act, the circuit court for the district in which such public employer is located shall have power, upon filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, specifically to require such employer to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by reason of such employers' unlawful action."

Defendants contend that section 5(b) undertakes to impose an administrative function on the courts, in violation of Constitution 1908, art 4, §§ 1, 2, dividing the powers of government into 3 departments; citing *Koeper* v. *Detroit Street Railway Commission,* 222 Mich 464. Involved in that case was the veterans' preference act, PA 1897, No 205, as amended by PA 1919, No 224, section 2 of which provided that no veteran should be removed from his public employment, except after hearing before the circuit court and only upon its written order. This Court held that that

provision attempted to delegate an executive or administrative function to the judicial department of government and was, therefore, unconstitutional and void. The act provided for no determination of grounds for removal by any administrative agency, but placed sole responsibility for deciding whether such employee should be removed or not upon the court. This Court quoted with approval from the opinion of the trial judge, as follows:

"Said section 2 is unconstitutional, null and void in that no provision is made in said section or in the act itself specifically setting forth the causes based upon which the order of such removal, suspension and transfer may be made. There being no common standard for determination mentioned in the statute, no judicial question arising under the statute is presented to the court."

Distinguishable is the instant situation, in which section 2 of the act here involved specifically sets forth the conditions and circumstances under which re-employment is required, thus establishing a standard for determination, and in which section 5(c) thereof places on the employing administrative agency the responsibility for compliance with the requirements of section 2 and, hence, for determining, as provided in that section, the existence or absence of such conditions and circumstances. We do not agree with defendants that under section 5(b) the question thereafter before the circuit court is the same as the one previously before the public employer. Section 5(b) imposes upon the court the judicial function and duty, upon petition, to require compliance with the act. That is the sort of function constantly performed by courts. There is nothing in the act which specifically requires the court, in performing that duty, to reject the public employer's determinations and substitute and follow its own as

to whether the employee is still qualified to perform the duties of the position or whether it is feasible to restore him to employment. As already stated, those determinations are expressly required, by section 5(c), to be made by the administrative employing unit. Neither is there anything in the act requiring the court to abandon the general rule and practice, with which the legislature must be deemed to have been familiar, followed in the review of administrative decisions, namely, to decline to usurp administrative functions or to substitute judicial judgment for administrative judgment in the determination of facts, but to confine the judicial role to that of inquiry into whether the administrative agency made such determination as required by law and, if so, to accept it if, and only if, it is supported by evidence and has a sufficient foundation. That this properly comes within the province of the courts appears from *Purdie* v. *Detroit Police Department Trial Board,* 318 Mich 430, and cases therein cited. Section 5(b) is, therefore, not, as contended, unconstitutional.

The trial court did not err in denying a motion to dismiss as to defendant board on the ground that it is not a corporate legal entity under the city charter with capacity to sue and be sued. Defendants concede that CL 1948, § 613.35 (Stat Ann § 27.765), provides for service of process on unincorporated public boards where the right to bring suit against them is conferred by law, but contend that no right to sue defendant board is conferred by law. PA 1951, No 263, itself confers such right in providing that only the employer shall be deemed a necessary party respondent to any action such as this and in defining a "public employer" as any department, agency or instrumentality of any municipality employing a public employee in a position. Defendant board is such employer.

Defendants say that plaintiff waived his right to reinstatement because, at the time of his entry into military service, he resigned rather than to take a leave of absence as permitted under a resolution of defendant board and a provision of city charter. The statute does not make the right to its benefits dependent upon how a public employee separated himself from his employment to perform military duty. It simply applies its beneficent provisions to "any public employee who leaves a position * * * to perform military duty." That statutory language covers plaintiff's situation, regardless of whether he resigned or took leave of absence. No board resolution or city charter provision can supersede it.

Next, defendants urge that plaintiff did not make sufficient or proper application for re-employment in that he did not apply to defendant board formally, but only talked about it to the chief of police, and because such conversation occurred after plaintiff was permitted to leave military duty and remain at home, but before he received his honorable discharge. We think this without merit, especially in view of the fact that defendant board did consider his informal application and, on the basis thereof, determined not to reinstate him for an entirely different reason. Formal and seasonable application would have made no difference to the action of the board.

We come now to defendants' claim that they were not required under the act to re-employ plaintiff because he was not "still qualified to perform the duties of such position" and because it was "not feasible for such person to be restored." As previously stated, in considering that claim it is not our function to determine the facts, but, rather, to ascertain whether defendant board made such determination and, if so, whether there was a sufficient foundation for it and whether the finding was supported by evidence. *Purdie* v. *Detroit Police Department Trial*

*Board, supra.* The difficulty with defendants' position in this connection is that it is evident from the record that defendant board never determined that plaintiff was not "still qualified" or that it was "not feasible" to restore him, but refused to re-employ him for an altogether different reason. And with good reason did it refrain from determining that plaintiff was not "still qualified," as the record makes clear. Plaintiff testified that he was in good physical condition, had not been wounded or disabled in any way while in the armed service, and had never been disciplined or had any trouble or complaints about his work while serving as policeman. That testimony stands unrefuted, except as it may be considered assailed by that of the present chief of police, who testified that he had been a police inspector during the period of plaintiff's previous service and, as such, had never heard anything derogatory about plaintiff on the force, but that after plaintiff applied for reinstatement he (the new chief) "talked to some of the superior officers and they said he's a very good boy but a very poor policeman. * * * They said he was obstinate, he didn't like to accept orders * * * a captain told me * * * he was downright lazy." These criticisms related to plaintiff's 5-year service as policeman prior to his service in the armed forces for a year and a half. There is no testimony making those criticisms applicable to plaintiff or his qualifications to be a policeman after his return from military duty, nor is there any adverse testimony in that regard. There was, then, no foundation for or any evidence to support a determination, had it been made, that plaintiff was not "still qualified" to perform the duties of policeman upon his return from military service.

It is significant that in making qualification a prerequisite to reinstatement, section 2(a)(1) uses the term "If *still* qualified" and section 2(a)(2) reads

"If not qualified  *  *  *  by reason of disability sustained during such (military) service." This language presupposes from the fact that a public employee was holding his position, that he was qualified to perform its duties before entering military service, and is expressive of a legislative intent that a lack of qualification for the position, to be relied upon as the basis for refusal to re-employ, must be one occurring after leaving such position to enter the armed service and resulting from a disability sustained during such service. To hold otherwise would be to permit an employee's position to be prejudiced by the very fact of military service, and it was precisely this which the statute was designed to prevent. Evidence of a disqualification of that character is utterly lacking in this record. At all events, defendant board did not determine and did not predicate its refusal to re-employ on the grounds that plaintiff was not "still qualified." A board member testified that the refusal was not based on anything "personal about Mr. Borseth  *  *  *  or his service while a member of the force." Testimony of other board members was of the same tenor and established that their refusal was for a different reason altogether. Defendants may not assert on appeal here a reason not relied upon and administratively determined as a fact by defendant board previous to or at the time of its refusal to re-employ plaintiff.

What defendants now point to as constituting a determination by defendant board that it was not feasible to restore plaintiff consists, as disclosed by testimony of board members, of this: That defendant board had "taken the position  *  *  *  that it wasn't fair to the men on the force to reinstate a man that had severed connections, withdrew all his pension fund." In amplification, they admitted, in effect, that, if plaintiff had merely taken a leave of absence

and left his pension contributions in the fund when
he entered the armed forces, they would have deemed
it feasible to and he would have been re-employed
upon his return; but they insisted that it would not
be feasible and would be destructive of police depart-
ment morale to reinstate a man who, instead, had
resigned and withdrawn his pension contributions.
The only material difference shown on the record
between the 2 situations is the leaving of contribu-
tions in the pension fund in the former instance and
their withdrawal in the latter.   There is no evidence
in the record, and there appears to have been none
before defendant board, to support a determination
that reinstatement after service in the armed forces
would be more feasible and less destructive of morale
in the former instance than in the latter.   Further-
more, when plaintiff applied for reinstatement he·
offered, as subsequently required by the trial court,
to return to the pension fund the sum he had with-
drawn upon resignation.   Defendants complain here
that the statute does not authorize the court to re-
quire such reimbursement and thus remove the main
prop from the position assumed by defendants.   That
question we need not determine inasmuch as it is not
raised in defendants' statement of reasons and
grounds for appeal or statement of questions in-
volved in their brief.   That plaintiff offered such
reimbursement and that defendants did not accept
it but now object to the court's requiring it, is elo-
quent, however, of the fact that in reality defendant
board's refusal never was based on a determination
that it would be unfeasible or destructive of morale
to reinstate plaintiff solely because he had resigned
and withdrawn his pension contributions (nor is
there any foundation for or evidence to support such
determination in this record).   On the contrary, it
is clear that defendant board has "taken the posi-
tion" that policemen about to enter the armed serv-

ices ought to comply with the board's resolution adopted in that connection by taking a leave of absence from their jobs and from their pension contributions and refrain from resigning and withdrawing the contributions, and that failure to so comply merits refusal, despite the absence of any other justification recognized by the statute, of the re-employment guaranteed and required by State law.

It is to be noted, in addition, that when a determination is made by a public employer that it is not feasible to restore an employee to his former employment or that he is not still qualified for such position, the statute requires such employer to determine thereafter whether it has some other available position for which such employee is qualified and, if so, to assign him to it. Lack of evidence in the record to disclose that defendants followed such course of procedure also bespeaks a failure to have determined the statutory questions of nonqualification or nonfeasibility at all.

Defendants have failed to comply with the provisions of the statute and it is within the power of the circuit court to require it.

Affirmed, without costs, a public question being involved.

ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.